# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILVER VERAS,<br><br>Defendant | 3:19-CR-010<br><br>(MARIANI, J.)<br>(MEHALCHICK, M.J.) |

## MEMORANDUM

This matter comes before the Court on Defendant's Motion for Pretrial Release Due to COVID-19. (Doc. 92). Defendant, Wilver Veras, moves this Court to reconsider its earlier order of detention, and to order the temporary release of Veras in order to facilitate the preparation of a defense and due to a compelling reason pursuant to 18 U.S.C. § 3142(i). The Government opposes this motion. (Doc. 97).

I. **BACKGROUND AND PROCEDURAL HISTORY**

On September 11, 2018, Wilver Veras was charged in a Criminal Complaint with conspiracy to possess with the intent to distribute cocaine and methamphetamine in violation of Title 21 U.S.C. §§ 846 and 841(a)(1). At his initial appearance on the Complaint, Veras waived a detention hearing due to a detainer lodged against him in Luzerne County; he was ordered detained without prejudice to seeking release if his circumstances changed. (Doc. 10). On January 8, 2019, Veras was charged by Indictment with conspiracy to distribute a controlled substance, in violation of Title 21 U.S.C. § 846, and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841 (a)(1). (Doc. 30). At his arraignment on January 16, 2019, Veras entered a plea of "not guilty" to the Indictment. (Doc. 40). The Government moved for continued detention of Veras; his counsel sought release.

The Court conducted a detention hearing and determined that Veras should continue to be detained, finding first that Veras failed to rebut the presumption of detention, and further finding that detention was warranted based on consideration of the factors to be considered under the Bail Reform Act – the nature and circumstances of the offenses charged; the weight of the evidence against the defendant; the history and characteristics of the defendant, including his prior criminal history, lack of stable employment, and significant family ties outside the United States; and the danger to the community should he be released. (Doc. 42).

On November 14, 2019, Veras filed a motion to review detention. (Doc. 72). At a hearing held on November 25, 2019, Veras presented witness testimony and other evidence of his ties to the community, including his employment, volunteer work, and involvement in the art community. That hearing focused primarily on the "history and characteristics of the defendant" factor under the Bail Reform Act. In particular, the Court focused on Veras's apparent inability to abide by conditions directly related to the safety of others, including at least two violations of Protection from Abuse Orders in place against him that occurred in a span of three months. Additionally, while detained since the last hearing, Veras had been found guilty of two physical altercations involving physical violence on another inmate. The Court concluded, pursuant to 18 U.S.C. § 3142(e), that continued detention was appropriate because the Government had demonstrated by clear and convincing evidence that Veras was a danger to the community and that no condition or combination of conditions could reasonably assure the safety of the community. (Doc. 80).

Veras is currently housed at Lackawanna County Prison. On March 27, 2020, Veras, through counsel, filed a third motion to review detention. (Doc. 92). In this motion, brought pursuant to 18 U.S.C. § 3142(i), Veras seeks an order of temporary release to facilitate the

preparation of a defense and due to a compelling reason – that being the risk associated with being incarcerated during the current COVID-19 pandemic. Veras specifies no particular, individualized reason for release, such that he suffers from a serious health condition which places him at higher risk for contracting the COVID-19 virus, and only argues that the virus poses a risk to him and to other inmates, and that his ability to prepare his defense and meet with counsel is impeded by the pandemic. He seeks the same release plan, including the appointment of his brother as third-party custodian, as he did at his last detention hearing.

Counsel for Veras filed a Notice with the Court on March 31, 2020 indicating that the parties were unable to come to an agreement regarding Veras's release from detention, and further, that no hearing is necessary on this motion.[1] (Doc. 96).

**II. DISCUSSION**

    A. THE COVID-19 PANDEMIC

On March 11, 2020, the World Health Organization declared the novel coronavirus known as COVID-19 a pandemic.[2] The COVID-19 outbreak caused the President of the United States to declare a national emergency and the Governor of the Commonwealth of

---

[1] The Court is unaware of any authority that provides a defendant with a right to a hearing when he seeks temporary release under § 3142(i), and the Court is able to resolve the motion without a hearing or oral argument.

[2] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020).

Pennsylvania to declare a state of emergency.[3] As of the date of this writing, there are 1,174,866 confirmed cases worldwide and 64,541 deaths; in the United States, there are 307,318 confirmed cases worldwide and 8,353 deaths.[4] Mindful of the incredible magnitude of this situation, and the extreme health risks associated with COVID-19, the Court will address the motion for pretrial release.

    B.    <u>CONDITIONS AT LACKAWANNA COUNTY PRISON</u>

Attached to the Government's brief in opposition (Doc. 97) to Veras's motion for pretrial release are the preventative actions taken by Lackawanna County Prison in response to the COVID-19 pandemic. (Doc. 97-1; Doc. 97-2). Specifically, the prison implemented an action plan designed to mitigate the potential for spread of COVID-19 inside its facility, and for the protection of inmates and staff, including suspending contact visits, regular visitation, and visitation from volunteers, including religious leaders; implementing aggressive sanitation programs; suspending all programs that utilize "outside" employees; limiting individuals past reception to prison and medical staff; limiting attorney visits with inmates to meetings through the glass of a lawyer visitation room; cancelling all conferences and out-of-

---

[3] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Tom Wolf's Proclamation of Disaster Emergency (March 6, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

[4] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited April 6, 2020).

county trainings; planning for weekly contact with officials from the Pennsylvania Department of Corrections; and posting educational flyers in the blocks and in the reception area.

As of April 2, 2020, one correctional officer at the Lackawanna County Prison tested positive for the virus. The Government submits that, according to the U.S. Marshals Service, the officer who tested positive did not have any close contact with Marshal Service Personnel, and that it is unlikely, though possible, that the officer who tested positive had close contact with federal inmates at the prison. The inmates have been advised of the situation and are currently on lockdown. The prison continues to admit prisoners during the lockdown. Inmates are permitted out of their cells for showers, phone calls, attorney visits (through glass windows), and video teleconferencing for court proceedings.

In addition to the above measures and precautions, effective March 20, 2020, the Warden of Lackawanna County prison began requiring that all employees and other individuals (including counsel for inmates) be screened for fevers, and if necessary, other symptoms, upon entering the prison. (Doc. 97-2).

### C. TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(I)

Veras moves for temporary release pursuant to 18 U.S.C. § 3142(i) of the Bail Reform Act. That section provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason.*

18 U.S.C. § 3142(i) (emphasis added).

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *United States v. Roeder*, 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).

Until recent weeks, most motions brought pursuant to § 3142(i) were analyzed under the "necessary for preparation of the person's defense." Not much authority existed as to when temporary release is justified under § 3142(i) based on "another compelling reason." Typically, relief was granted under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *see also United States v. Scarpa,* 815 F. Supp. 88 (E.D.N.Y. 1993) (permitted the defendant to be released under the 24-hour guard of the United States Marshal Service at his own expense because the defendant had sustained a gunshot wound that destroyed his left eye and surrounding area of his face and skull, he would "shortly die" from terminal AIDS, and correctional authorities could no longer manage his medical conditions.); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 144-47 (D.P.R. 2002) (district court ordered the release of a defendant who had sustained multiple gunshot wounds, was partially paralyzed, could not walk, had lost some arm function, had a wound the size of a fist, and required 4-5 contracted security guards on a daily basis to supervise him; the Bureau of Prisons would not take custody of him because it could not provide the medical care that he required.) Most recently, in *United States v. Garcha*, the Court granted defendant's motion for pretrial release pursuant to § 3142(i) where the defendant was HIV-positive, had a brain tumor, and suffered a pulmonary embolism in 2017,

and thus was not only particularly susceptible to contracting the COVID-19 virus, *but was also* unable to obtain the necessary MRI and treatment for his brain tumor while in prison.) 2020 WL 1593942, at *2 (N.D. Cal. Apr. 1, 2020) (emphasis added).

Since the onset of the COVID-19 pandemic, and the filing of motions seeking pretrial release, release pending sentencing, compassionate release, and delays in report dates, courts across the country have begun to consider whether the pandemic constitutes a "compelling reason" for temporary release. Consistent in these decisions are findings that the risk of exposure, actual exposure, or contracting the virus, is just one factor to be considered and weighed against the other factors under the Bail Reform Act, including previous findings of danger to the community and risk of flight. Further, the existence of a widespread health risk or mere speculation about potential exposure to the virus does not constitute a "compelling reason" for temporary release under § 3142(i).[5]

Numerous decisions out of the District Court for the Western District of Pennsylvania weigh defendants' arguments for release due to potential COVID-19 exposure against the original factors considered by the court in ordering detention. These decisions repeatedly

---

[5] In considering an application for compassionate release, the Court of Appeals for the Third Circuit recently noted "… the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). In considering a motion to continue a self-surrender date in light of the COVID-19 pandemic, the court noted that "the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence," and stating that it is "imperative" that the courts "continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief. *Roeder*, 20-1682, 2020 WL 1545872, at *3.

recognize that the potential for exposure exists anywhere in the community, not just in jail, and where necessary steps and precautions to help stop the spread of the virus are being taken by the county jail, along with the court and other authorities, and where there is no indication that a defendants' medical needs are not being met, speculation concerning possible future conditions does not constitute a "compelling reason" for temporary release, especially where the court previously found defendant's release would pose a danger to the community. *United States v. Loevings*, CR 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020); *United States v. Thomas*, CR 19-176, 2020 WL 1599339, at *1 (W.D. Pa. Mar. 31, 2020); *United States v. Fiumara*, CR 15-94, 2020 WL 1540486, at *2 (W.D. Pa. Mar. 30, 2020) (defendant not entitled to release pending final supervised release revocation hearing where she did not articulate any unique susceptibility to the Covid-19 virus and she did not convince the court that her release would not pose a danger to the community); *United States v. Pritchett*, CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including a diagnosis of asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that while Defendant indicates that he suffers from hypertension, sleep apnea and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions are not sufficient to establish a compelling reason for release given the danger to the community if he is released and the efforts being undertaken at the [jail] to combat the spread of the virus) (citing *United States v. Davis,* No. 19-1604, Doc. No. 50 (3d Cir. March 20, 2020); *United States v. Willie Harris,* No. 18-152, Doc. No. 986, Mem. Order (W.D. Pa. March 20, 2020)).

A number of cases out of the District of Maryland also hold that the new circumstances of COVID -19 are but one factor to consider in weighing a request for temporary release under § 3142(i). *United States v. West*, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020). In *West*, the defendant tested positive for COVID-19. The court denied his motion for pretrial release, holding that he is receiving medical care in jail, he has no plan for medical care should he be released, and that there is no evidence that medical care he might receive in the community is better than that which he is receiving in prison, without continuing to be a threat to the safety of others. *West*, 2020 WL 1638840, at *2. In sum, the court found that the risk factors presented with regard to COVID-19 did not outweigh the factors supporting the court's previous finding that no condition or combination of conditions would reasonably assure the safety of the public should defendant be released.

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates have tested positive for COVID-19 and defendant suffers from allergies and asthma); *United States v. William Bilbrough, IV*, TDC 20-33 (D. Md. Mar. 20, 2020) (denying the defendant's motion even though the defendant suffered from diabetes); *United States v. Julius Williams*, PWG 13-544 (D. Md. Mar. 24, 2020) (denying a 67-year old defendant's motion); *United States v. Anthony Penaloza*, TDC-19-238 (D. Md. Mar. 31, 2020) (denying the defendant's motion even though the defendant suffered from a heart murmur); *United States v. Teon Jefferson*, CCB-19-487 (D. Md. Mar. 23, 2020) (denying the defendant's motion even though the defendant was asthmatic).

In determining whether the defendant establishes a "compelling reason" for temporary release pursuant to § 3142(i), the District Court in Kansas evaluated the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court considered the factors as a whole to help guide its determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i). *United States v. Clark*, 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). The court found that, on balance, Clark had not established compelling reasons that temporary release is necessary. The court noted that Clark's arguments regarding the risk of an outbreak at his facility was speculative, that he had not established that his proposed release plan would necessarily alleviate his overall COVID-19 risks, his pretrial release would place pretrial services officers at risk in supervising him and, if and when the temporary release inevitably ends, it would place the USMS officers at risk in re-apprehending him and the facility at risk when he eventually reenters it after potentially having been exposed while released. *Clark*, 2020 WL 1446895, at *8 . Other courts have adopted the four-factor analysis in *Clark*, in determining whether a defendant has established a compelling reason for temporary release under § 3142(i). *See United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020) (analyzing defendant's motion using the *Clark* factors and denying the motion where the defendant's motion is speculative, the original grounds for detention remain unchanged, and the risks of exposure are not mitigated for the defendant, and possibly increased for others); *United States v. Lunnie,* 4:19-CR-00180 KGB, 2020 WL 1644495, at *1 (E.D. Ark. Apr. 2, 2020) (motion

denied based on analysis of *Clark* factors despite defendant's history of bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his abdomen); *United States v. Dodd*, 20-CR-0016 (NEB/HB), 2020 WL 1547419 (D. Minn. Apr. 1, 2020) (denying motion for temporary release after considering the *Clark* factors).

The Court finds that the *Clark* factors are instructive in determining whether a compelling reason exists for temporary release, and in particular in balancing the risk of exposure in prison against the other factors to be considered under the Bail Reform Act, and will consider Veras's motion under this framework.

### III. ANALYSIS

Considering the factors outlined in *Clark*, the Court concludes that Veras has not established a compelling reason to grant him temporary release under § 3142(i). First, as noted, this is Veras's *third* motion for review of detention. The Court has twice concluded that there is no condition or combination of conditions which could reasonably assure the safety of the community should Veras be released. In reaching that determination the first time, the Court considered the factors under § 3142 – the weight of the evidence against the defendant; the history and characteristics of the defendant, including his prior criminal history, lack of stable employment, and significant family ties outside the United States; and the danger to the community should he be released. (Doc. 42). At the second detention hearing, the Court again found that Veras should be detained, particularly in light of his apparent inability to abide by conditions directly related to the safety of others, including at least two violations of Protection from Abuse Orders in place against him, and undisputed altercations involving physical violence on another inmate while in detention. The Court concluded, pursuant to 18

U.S.C. § 3142(e), that continued detention was appropriate because the Government had demonstrated by clear and convincing evidence that Veras was a danger to the community and that no condition or combination of conditions could reasonably assure the safety of the community. (Doc. 80). Nothing presented in Veras's latest motion changes the original grounds for pretrial detention.

Second, Veras's COVID-19 concerns are speculative. Veras does not submit that he has any particular health condition which increases his risks from exposure to the COVID-19 virus. Rather, he makes a general argument that the conditions of confinement – merely being incarcerated – increase his risk of exposure to COVID-19. Although mindful of the magnitude of the COVID-19 pandemic, and the extreme health risks it presents within the jail and prison setting, "a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation." *Boatwright*, 2020 WL 1639855, at *8; *see also Raia*, 2020 WL 1647922, at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")

Third, Veras's proposed release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. *Clark*, 2020 WL 1446895, at *6. The proposed plan includes Veras living with his brother, who is the proposed third-party custodian, and being subject to electronic monitoring. (Doc. 93, at 11). The plan does not address any aspects of public health officials' recommendations and does not address other risk factors that would arise if Veras were released from custody. *Clark,* 2020 WL at 1446895, at *6. The information offered by the Government establishes that there is a plan to address and mitigate the risks of COVID-19 at the prison. While Veras has offered a conclusory allegation that the prison will

be unable to manage care of inmates during the pandemic, the information before the Court includes the prison's actual plan to do just that. (Doc. 97-1; Doc. 97-2). *Boatwright*, 2020 WL 1639855, at *7. Further, Veras does not address the extent to which his risks of infection could be exacerbated if he were to be released to live with his brother. There is no explanation of how the proposed living situation mitigates not only Veras's risk of infection, but the also the risk of infection to his brother, his brother's partner, or his brother's three children, ages 2, 7, and 16. (Doc. 42, at 53). Veras does not identify any screening practice or COVID-19 precautions being taken in the home.

Finally, the Court considers the likelihood that Veras's proposed release would increase COVID-19 risks to others. The Court has previously decided that Veras should be detained, in part because he was unable to comply with other court orders, namely the Protection from Abuse Orders against him. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *Boatwright*, 2020 WL 1639855, at *8. Veras's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on pretrial release. *United States v. Lee,* 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). If and when Veras's proposed temporary release[6] plan ends, it will place the United States Marshals Service officers at risk

---

[6] Having determined that Veras does not establish a compelling reason for temporary release under § 3142(i), the Court will not reach what the scope of "temporary" might mean in this situation.

13

in re-apprehending him or the facility at risk when he eventually reenters it after having had abundant opportunity for contamination. *See Lunnie*, 2020 WL 1644495, at *5.

Veras also submits that his release is necessary for the preparation of his defense. (Doc. 93). The Court recognizes that the pandemic may pose obstacles to the preparation of a defense. However, in this case, Veras has not established that the restrictions in place at Lackawanna County Prison are such that they are a compelling reason for his temporary release. First, though not ideal, the prison still allows for attorney visits, albeit through a glass window. (Doc. 97-1). Nothing in the measures outlined by the prison indicate that attorney visits or calls are in any other way restricted. (Doc. 97-1). The Court is confident that the prison will respect the privileged nature of the communications between attorneys and their clients as nothing to the contrary has been brought to its attention to cause concern. Second, this Court has excluded all time from March 16, 2020 through April 30, 2020 under the Speedy Trial Act, partly to address the anticipated difficulty defense counsel may encounter meeting or visiting with clients during this time (including those detained in locales and facilities under a declared state of emergency), and the inherent delay in the scheduling of further trials as a consequence of the exclusion period.[7] Veras has not suggested that his situation with regard to consultation with counsel is an urgent one or otherwise distinguishable from that facing other pretrial detainees at this time. *See Dodd*, 2020 WL 1547419 at *3.

---

[7] *See* General Orders 20-01, 20-01 (Supp.), https://www.pamd.uscourts.gov/court-info/local-rules-and-orders/general-orders

IV. **CONCLUSION**

While the Court is sympathetic to the concerns regarding the spread of COVID-19, and recognizes the potential for Veras's exposure to the virus while at Lackawanna County Prison, that potential exists anywhere in the community. Veras has not articulated any particular health issues that put him at a higher risk for infection. Lackawanna County Prison has taken steps to minimize infection. There is no evidence that Veras is not getting the medical attention he needs. Additionally, Lackawanna County Prison has put in place protocols to allow for lawyer-client communications while also protecting against the spread of the virus.

In sum, Veras has not presented a "compelling reason" for temporary release under 18 U.S.C. § 3142(i). As such, his motion for pretrial release (Doc. 92), is **DENIED**.

An appropriate Order will follow.

**Dated: April 6, 2020**                                        *s/ Karoline Mehalchick*
                                                                **KAROLINE MEHALCHICK**
                                                                **United States Magistrate Judge**